UNITED STATES v. BAKER–LOCKWOOD MFG. CO., Inc., et al. (three cases).

Nos. 12673–12675.

Circuit Court of Appeals, Eighth Circuit.

Sept. 29, 1943.

Joseph M. Friedman, Chief, War Frauds Civil Unit, Department of Justice, of Washington, D. C. (Francis M. Shea, Asst. Atty. Gen. and Samuel D. Slade, Bonnell Phillips, and Jess G. Shiffmann, U. S. Attys., all of Washington, D. C., on the brief), for appellant.

J. Francis O'Sullivan, of Kansas City, Mo. (Maurice J. O'Sullivan, of Kansas City, Mo., on the brief), for appellee Lou Nathanson.

M. J. Henderson, Jr., Ben W. Swofford, Herbert Jacob, and John B. Pew, all of Kansas City, Mo., for appellees Baker-Lockwood Mfg. Co., Inc., and W. L. Mellor.

Before SANBORN, and RIDDICK, Circuit Judges, and LEMLEY, District Judge.

RIDDICK, Circuit Judge.

On February 12, 1943, the United States grand jury at Kansas City, Missouri, in the Western District of Missouri returned an indictment charging the Baker-Lockwood

Manufacturing Company, Inc., and certain individuals with having entered into a conspiracy to defraud the United States in violation of section 37 of the Criminal Code, 18 U.S.C.A. § 88. On Saturday, February 13, 1943, the day following the return of the indictment one Nathanson, a resident of Chicago, filed a civil action against the parties charged in the indictment for the recovery of penalties and double damages provided by section 5438, 18 U.S.C.A. §§ 80, 82–86, and sections 3490–3493, of the Revised Statutes, 31 U.S. C. §§ 231–234, 31 U.S.C.A. §§ 231–234, hereinafter sometimes referred to as the false claims statute. The style of this action in the district court was United States of America at the relation of and to the use of Lou Nathanson, Plaintiff, v. Baker-Lockwood Manufacturing Company, Inc., et al., Defendants. On the following Monday, February 15, 1943, the United States, proceeding under the same statute against the same parties and for the same relief, filed its civil action under the style of United States of America, Plaintiff, v. Baker-Lockwood Manufacturing Company, Inc., et al., Defendants. And on February 17, 1943, one Pink, a resident of Cincinnati, Ohio instituted the identical cause of action in the federal district court at Kansas City under the style of United States of America on relation of Benjamin P. Pink, Plaintiff, v. Baker-Lockwood Manufacturing Company, et al., Defendants.

We are concerned here only with the civil proceedings mentioned above. Section 5438 of the Revised Statutes makes punishable by fine and imprisonment certain efforts to defraud the Government of the United States. By sections 3490 to 3493 of the Revised Statutes, it is provided that one committing any of the acts prohibited by section 5438 shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of the damages sustained by the United States, together with costs of the suit, to be recovered in one civil action. The statute commands the district attorneys of the United States to be diligent in the discovery of false claims against the United States and in the prosecution of civil actions to recover the forfeitures and damages provided by the statute. The Act further provides that such suits may be brought and carried on "by any person, as well for himself as for the United States; the same shall be at the sole cost and charge of such person, and shall be in the name of the United States, but shall not be withdrawn or discontinued without the consent, in writing, of the judge of the court and the district attorney, first filed in the case, setting forth their reasons for such consent"; and that a private person bringing the authorized suit and prosecuting it to final judgment shall be entitled to receive one-half of the amount of the forfeiture and of the damages recovered in the action.

The Baker-Lockwood Manufacturing Company, Inc., filed in each civil action a motion to stay proceedings, alleging that each of the actions involved the same parties plaintiff and defendant, and the same facts and circumstances, and that the defendants could be compelled to respond in only one of them. The United States also in each of the civil actions filed a motion to stay proceedings until the trial of the criminal action, alleging that only one cause of action existed for the recovery of the penalties and damages provided in such cases and that only one of the civil actions could be tried. All of the motions for stays of the civil actions were submitted to the district court at the same time, and argument thereon was participated in by counsel representing all of the parties. It clearly appears from the record that all parties were agreed that the three civil actions involved the identical cause of action against the defendants and that only one of them could be tried; and further that, at the hearing upon the motions, the sole issue as between the parties to the civil actions was which action was entitled to preference over the other in the order of trial, and that this was the issue decided by the court.

At the conclusion of the hearing on the motions, the district court denied the motion of the Government to stay proceedings in the three civil actions until the trial of the criminal action. No reason was given for this decision, but it is inferable from the record that at the time it was rendered the criminal case had been set for trial ahead of the civil actions. Later it developed that the Government was unable to proceed with the trial of the criminal action because of the absence of necessary witnesses, and it became necessary to postpone its trial. In the meantime, however, the district court, having taken the motions for stays in the civil actions under advisement, entered in each action an iden-

tical order, by which it stayed the trial of the Government's civil action and of Pink's case until further order of the court. The Nathanson suit was set for trial, and, as matters now stand, it will be tried in advance of the Government's criminal action, and before the Government's civil action. The district court was of the opinion that as between the three civil actions the one first filed in the court was entitled to take precedence over the others. The Government has appealed from the order of the district court overruling its motion to stay proceedings in the civil cases until the trial of the criminal case, and from the orders of the district court staying proceedings in the Government's civil action. The appeals have been heretofore consolidated for hearing in this court.

Nathanson has moved to dismiss the appeal of the United States in the Nathanson suit on several grounds, only three of which require notice. He contends (1) that the United States is not a party to the Nathanson suit, and, for that reason, is not entitled to appear in it or appeal from an order made in it; (2) that the Government has not in fact perfected an appeal from the order staying the Government's civil action entered in the Nathanson suit; and (3) that the order of the court staying the Government's suit is a mere procedural order from which no appeal lies. All of these contentions must be denied. The United States is not only a party on the record in the Nathanson suit, it is a real party in interest, and, as such, we think it has the right to appear and be heard in the protection of its interests. Nor is the question whether the Government has perfected an appeal from the stay order entered in the Nathanson suit of any practical importance in decision here. We think the appeal was properly taken. But, in any event, the Government has appealed from the stay order entered in its civil action, and that order, being identical with the stay order entered in the Nathanson suit and in the Pink suit, made at the same hearing upon the same motion in all three suits, it is unimportant, if true, that the Government has not appealed from one or the other of the record entries of the same order. In the circumstances here an appeal from one in ultimate result, is an appeal from all. A reversal of the stay order entered in the Government's suit with directions to grant it precedence over the in-

former's suit disposes of Nathanson's claim to precedence.

We think the order staying the prosecution of the Government's civil action and granting precedence to the trial of Nathanson's action is clearly injunctive in nature, and, as such, appealable under section 129 of the Judicial Code, 28 U.S.C. A. § 227. Ettelson et al. v. Metropolitan Life Insurance Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. ——; Griesa v. Mutual Life Insurance Co., 8 Cir., 165 F. 48. The order was more than a mere administrative, interlocutory order determining the order of the trial of cases before the court below. The effect of the stay order was not merely to determine the order of trial of different actions pending in the district court, but to put an end to the actions, including the Government's action, which were stayed. The court was not dealing with three separate and distinct causes of action, but with one cause of action which had become the subject matter involved in three separate suits. In these circumstances, the trial of one of the cases and the staying of the others effectively disposed of the suits which were stayed. The finality of the order and its injunctive character are sufficiently illustrated by Nathanson's contention that as the first plaintiff to file he is entitled to the exclusive possession and control of the cause of action involved in the three suits, and to priority in trial, as well as by the agreement of all the parties that the trial of one of the suits would put an end to the others.

This brings us to the merits of the controversy before us. It should be pointed out that we are not concerned with the question of the right of precedence in the order of trial as between mere qui tam plaintiffs in different suits on the same cause of action under the false claims statute. That question is not before us and is not decided. Nor is there involved in this proceeding any question of the right of the private informer to proceed in a civil action under the false claims statute, where the Government has neither brought the same action nor indicated an intention to bring it. The precise question here is whether a qui tam plaintiff is entitled to the exclusive control and prior trial of an action to recover for frauds perpetrated upon the United States, on the sole ground that the qui tam plaintiff was the first to file the proceeding in court, and without

regard to the ability of the qui tam plaintiff adequately to represent the public interest, where it is conceded that the same cause of action is also being concurrently prosecuted with diligence by the United States through its duly constituted officials. In the decision of the question presented, the relative rights of the Government and of the qui tam plaintiff to share in the recovery sought against the defendants are of little or no significance. The public interest is paramount, and the question must be resolved by an interpretation of the false claims statute in the light of considerations of the orderly administration of justice and the effective enforcement of the laws of the land.

In the recent case of United States ex rel. Marcus v. Hess et al., 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. ——, the court sustained the right of a qui tam plaintiff proceeding under the false claims statute to maintain a cause of action to recover penalties and damages provided by the statute, where the Government had brought no civil action of its own, although the qui tam plaintiff in that case had contributed nothing to the discovery of the fraud, but had based his civil action upon information obtained from the Government's successful criminal prosecution. The decision of the court was based upon the interpretation of the false claims statute as related to the facts of that case. The question here was not involved in the proceeding and was not decided (63 S.Ct. 386). In the course of its opinion the court said: "Furthermore, one of the chief purposes of the Act, which was itself first passed in war time, was to stimulate action to protect the government against war frauds. To that end, prosecuting attorneys were enjoined to be diligent in enforcement of the Act's provisions, and large rewards were offered to stimulate actions by private parties should the prosecuting officers be tardy in bringing the suits." We think the statement quoted expresses the only possible interpretation of the Act as applied to the circumstances before us in this case. Congress intended by the Act to ensure vigorous prosecution of suits to recover damages for frauds perpetrated against the Government, and to guard against the possibility of laxity or worse on the part of enforcement officers of the Government, it offered large rewards for the prosecution of such suits on behalf of the Government, where its own officers failed to act with the diligence which the discharge of their official duties required of them. So interpreted, few will question the wisdom of the Act, even though changing circumstances may have made the reward offered the private prosecutor inordinately large. But it is quite another thing to ascribe to Congress the intent to authorize the private informer, at great expense to the public treasury, to usurp the duties of Government prosecuting officers or to proceed with the exclusive prosecution of suits for recovery under the Act when the Government itself through its duly designated officials is proceeding with diligence and dispatch to the same end. The threat to the orderly administration of justice resulting from giving the false claims statute such an interpretation is too obvious to require discussion. To hold that the Government, after the careful and diligent investigation and preparation necessary to the prosecution of an action in the Government's interest and on its behalf, must stand aside and stay its law-enforcement arm merely because a private citizen, having knowledge of the frauds involved, has won the race to the courthouse is to subjugate the public interest in the orderly administration of justice to the private interest of a citizen in the recovery for himself of the reward offered by the statute.

We find nothing in the wording of the Act of Congress involved here to justify a contrary interpretation. Indeed, the Act contains an expressed recognition of the paramount public interest in suits brought by informers in the provision requiring the consent of the judge and the district attorney to an abatement of the action. Likewise, the provision in the Act that the informer should be liable for all costs incurred in the prosecution of an informer's suit indicates the intention of Congress that informer suits were only authorized when the Government itself does not proceed in the same cause of action. Moreover, we think the justifiable inference from the language of the court in United States ex rel. Marcus v. Hess et al., quoted above, and from the decision of the court in the earlier case of Francis v. United States, 5 Wall. 338, 18 L.Ed. 603, supports the conclusion which we have reached. In the case last mentioned the right of an informer under a similar statute to project himself into a suit already brought by the Government was denied. The question for decision here can not be

made to turn upon the fortuitous circumstance that the Government or the qui tam plaintiff was the first to file a pleading in the court. Diligence on the part of governmental enforcement officers in the administration of justice and in the enforcement of the laws of the land for the protection of the public interest may not be made to depend, to use the words of the trial court, upon the outcome of "the miserable race" to the courthouse. Diligence in the enforcement of the false claims statute requires of the Department of Justice the careful and orderly investigation and preparation of the action to be brought, in order that the Government may be able, when the suit is filed, to prosecute it with fairness to the defendants charged as well as to the public. We hold that in the circumstances disclosed by the record before us the United States is entitled to precedence in the trial of the civil action over those actions brought by the informers, Nathanson and Pink.

The Government does not press its appeal from the order of the district court declining to stay proceedings in the civil action pending the trial of the criminal prosecution. As noted above, the record does not disclose clearly the basis of the court's action on that motion. In ordinary circumstances, such a motion is addressed to the discretion of the trial court, and this, we assume, was the situation here. It is proper to point out, however, that on the reversal of the stay orders involved in these appeals, the district court will have before it both the criminal and the civil actions brought by the United States, with the right in the Government to try either action in advance of the civil actions brought by the informers. In these circumstances, the Government should be permitted to elect which of the actions, civil or criminal, it shall first proceed with, in the absence of any showing of prejudice to the defendants in the respective actions or of a want of diligence on the part of the Government in the prosecution of the suit with which it elects to proceed.

The order of the district court overruling the motion to stay the civil actions pending the trial of the criminal prosecution is affirmed. The orders of the district court staying the Government's civil action are reversed, and these cases are remanded to the district court with directions to stay proceedings in the Nathanson suit and in the Pink suit, and for further proceedings in accordance with this opinion.