**UNITED STATES v. PITTMAN et al.**

No. 11395.

Circuit Court of Appeals, Fifth Circuit.

Nov. 6, 1945.

Rehearing Denied Jan. 7, 1946.

Francis M. Shea, Asst. Atty. Gen., Rawlings Ragland, Acting Head, Claims Division, Department of Justice, Joseph M. Friedman, Chief, War Frauds Civil Section, and George W. Meuth and J. Gregory Bruce, Attys., Department of Justice, all of Washington, D. C., and Jim C. Smith, U. S. Atty., and William H. Burton, Jr., Asst. U. S. Atty., both of Birmingham, Ala., for appellant.

J. K. Brockman, of Birmingham, Ala., for appellees.

Before SIBLEY and McCORD, Circuit Judges, and KENNAMER, District Judge.

SIBLEY, Circuit Judge.

A qui tam suit under R.S. § 3491, 31 U.S.C.A. § 232, was brought on August 5, 1943, by Charles M. Hewitt as relator in the name of the United States against the appellees. After R.S. § 3491 was amended by the Act of Dec. 23, 1943, 57 Stats. 608, and under the provisions of the amendment, the United States appeared in the suit and asserted a purpose to carry it on. The defendants-appellees moved to dismiss the suit (1) because the plaintiff Hewitt had not given notice to the Attorney General of the pendency of the suit as required by the Act, and (2) because the plaintiff had not disclosed to the United States or the Attorney General any information or evidence not already possessed, the court therefore having no jurisdiction under the Act. The district court dismissed the suit for want of jurisdiction, apparently on the second ground. The United States appeals.

As to the first ground of the motion, clause D of the amending Act relates to suits under R.S. § 3491 pending at its passage, and provides that "the court in which said suit is pending shall stay all further proceedings, and shall forthwith

cause written notice, by registered mail, to be given the Attorney General that such suit is pending, and the Attorney General shall have sixty days from the date of such notice to appear and carry on such suit in accordance with clause (C)." This notice given by the court is, we think, the only notice necessary of a suit pending on Dec. 23, 1943. The notice required by clause C to be given by the plaintiff on bringing a suit after that date is not necessary. The notice given here seems to have been that ordered by the court on suspending proceedings under clause D. If any other or more formal notice was required than was given, its only purpose was to cause an appearance by the United States within sixty days, and that was accomplished in this case. The general appearance of the United States waived any defect in the notice given, just as such appearance by a defendant in an ordinary suit waives defects in process or the service thereof. The appellees were preju-diced in no manner.

■ The second ground of the motion presents greater difficulty. Clause D as above quoted indicates that the pending suits to which it applies are, after notice to the Attorney General, to be carried on in accordance with clause C which regulates new suits. Clause C states: "If the United States shall fail, or decline in writing to the court, during said period of sixty days (after notice) to enter any such suit, such person (i. e. the relator) may carry on such suit. If the United States within said period shall enter appearance in such suit the same shall be carried on solely by the United States. In carrying on such suit the United States shall not be bound by any action taken by the person who brought it, and may *proceed in all respects as if it were instituting the suit:* Provided, That if the United States shall fail to carry on such suit with due diligence within a period of six months from the date of its appearance therein, or within such additional time as the court after notice may allow, such suit may be carried on by the person bringing the same in accordance with clause (B) above. *The court shall have no jurisdiction to proceed with any such suit* brought under clause (B) or pending suit brought under Section 3491 of the Revised Statutes *whenever it shall be made to appear* that such suit was based upon *evidence or information* in the possession of the United

States, or *any agency, officer or employee thereof,* at the time such suit was brought: Provided, however, That no abatement shall be had as to a suit pending at the effective date of this Act, if before such suit was filed such person had in his possession and voluntarily disclosed to the Attorney General substantial evidence and information which was not theretofore in the possession of the Department of Justice." (Italics added.) Clause (E) then provides for rewarding the relator for such disclosure in a suit taken over by the United States and successfully carried on or settled, in an amount fixed by the court not exceeding one-tenth of the proceeds; or an award of not exceeding one-fourth of the proceeds when not carried on by the United States, but by the relator.

The persons here sued proved by the relator and his attorney that when the latter brought this suit they had no information not in the possession of the United States and disclosed none to the Attorney General, but based the complaint on a federal indictment returned against the defendants and on nothing else. The district court thought the words of clause C denying jurisdiction to proceed under such circumstances were intended to apply not only to suits carried on by the relator, but also to those taken over and carried on by the United States, and required dismissal, although it appears that a new suit by the United States for the frauds here charged would now be barred by the six-year limitation fixed by R.S. § 3494, 31 U.S.C.A. § 235. It is argued that such is the unambiguous purport of the words above quoted, and no different intent ought to be considered.

■ Congress, however, did not say "*any* suit brought under clause (B) or Revised Statutes Section 3491", but "any *such* suit" so brought. We cannot throw away the word "such." It is descriptive and limiting, referring always to a class just before pointed out. Now several sorts of suits brought under clause B or R.S. § 3491 had just been mentioned in clause C: Those in which the United States appeared; those in which it neglected or declined to appear; and those in which the United States having appeared failed to prosecute in six months. Is it certain that all three of these classes are clearly meant? To include the class of qui tam suits taken over and diligently

prosecuted by the United States would collide with the broad provision just preceding that "the United States shall not be bound by any action taken by the person who brought it, and may proceed in all respects as if it were instituting the suit." If the United States had instituted suit for the fraud it would not matter what Hewitt knew or disclosed, but the United States would be entitled to prove the fraud by others if it could. We cannot believe the Congress intended that the United States should have no redress for such frauds merely because some relator had sued in its name without having possessed or disclosed original evidence or information. We would think rather that the provisions of the Act taken together mean that when a relator starts such a suit the Attorney General shall be notified and the United States as against the defendants has the right to adopt as its own what was from the first claimed in its name, unprejudiced by any thing the relator may have done or omitted to do; but as respects the relator the United States must reward him out of the proceeds if he has really contributed original information in bringing the suit. It is when the United States fails to adopt or prosecute the suit, and the relator carries it on, that the defendants may raise an issue with the relator as to the merit of his activity in bringing it, and on this collateral issue may defeat it utterly.

The legislative history of the Act supports this view. The old law permitted suit by any private person, even though he acted only on evidence in the possession of the United States. United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443. A concurrent suit might also be brought by the United States, causing a conflict of suits. United States v. Baker-Lockwood Mfg. Co., 8 Cir., 138 F.2d 48. The Attorney General pointed out the resulting evils and asked repeal of the provision authorizing suit by private relators. The House of Representatives passed such a Bill. The Senate substituted a Bill which retained but undertook to limit the private suits, but only if based on information and evidence original with the relator and disclosed beforehand to the Attorney General with a refusal by him to sue; but if the Attorney General should sue and succeed, the relator to be rewarded from the proceeds by a sum not to exceed one-tenth. As to

pending suits, they were to be stayed, the Attorney General notified, and he might move to dismiss the suit, but after relator disclosed original evidence without action by the Attorney General, the relator might bring a new suit. This Bill expressly provided that the Attorney General might bring suit himself based in whole or in part upon the information and evidence disclosed, and if the relator's suit was timely, that brought by the Attorney General would not be barred by limitation if filed within eight months. The conflicting bills went to a Conference Committee which wrote the act of December 23, 1943, passed by both houses. This Act follows most of the ideas of the Senate Bill, with two broad differences: The relator's suit is not to be dismissed and a new one filed when the Attorney General elects to carry on, but it is to be carried on by the United States "in all respects as if it were instituting the suit"; and the provision extending the period of limitation was dropped because, since the same suit is thus to be carried on, such a provision was not needed for the protection of the United States. The Senate bill denied jurisdiction to the court to hear or try "such suit brought or carried on by any person for himself and the United States" unless based on original evidence and information not in possession of the United States, and also denied jurisdiction to hear or try any suit then pending brought "by any person for himself and the United States" as to which there would not be jurisdiction if brought afterward. These provisions of the Senate Bill clearly applied only to a suit carried on by the informer, and not to the new suit the Attorney General might bring. We think the same purpose pervades the cognate provision of the Act as passed, and the denial of jurisdiction under the stated circumstances is intended to apply only to suits carried on by the relator, and not to those taken over (instead of bringing a new suit) by the United States. It seems wholly unreasonable to think that Congress intended that after the Attorney General appears and takes over for the United States the prosecution of a fraud claim because he thinks the claim a valid one, the United States should be cut off from a trial on the merits and the culprit should escape merely by proving that at the time the suit was brought the relator knew no more than some government

"agency, officer or employee" knew, even though that were enough to fully establish the claim. The intention was to discourage the carrying on of suits by undeserving relators; not to nullify the just claims of the United States when the Attorney General takes over the case in behalf of the United States.

The judgment of dismissal is reversed and the cause remanded to the district court for further proceedings consistent with this opinion.

Reversed and remanded.