## UNITED STATES ex rel. LESLIE v. POTOMAC ELECTRIC POWER CO.

### No. 11639.

United States Court of Appeals
District of Columbia Circuit.

Argued June 23, 1953.

Decided Sept. 17, 1953.

Mr. Alan Johnstone, Washington, D. C., with whom Messrs. Daniel L. Boland and Christopher T. Boland, Washington, D. C., were on the brief, for appellant.

Mr. Cornelius Means, Washington, D. C., with whom Messrs. James Francis Reilly, H. Wise Kelly and Thomas E. O'Dea, Washington, D. C., were on the brief, for appellee.

Before EDGERTON, BAZELON and FAHY, Circuit Judges.

BAZELON, Circuit Judge.

Charging that appellee[1] made false claims for electric service against the United States, appellant[2] brought this *qui tam* or "informer's" suit for damages under the False Claims Act.[3] That Act authorizes suit "by any person, as well for himself as for the United States"[4] against persons who present for payment any claim against the United States "knowing such claim to be false, fictitious, or fraudulent * * *."[5] In accordance with the provisions of 31 U.S.C.A. § 232(C),[6] relator furnished the Attorney General with a copy of the complaint and made written disclosure of the information upon which the complaint was based. The United States, through the Attorney General, then declined to enter the case. Although the Act permits relator to carry on the suit even if the United States fails to enter

1. Referred to hereafter as "the Company."

2. Referred to hereafter as "relator."

3. 12 Stat. 696, 698 (1863), as amended, 31 U.S.C.A. § 231 et seq.

4. 57 Stat. 608 (1943), 31 U.S.C.A. § 232 (B).

5. 31 U.S.C.A. § 231.

6. This section provides in pertinent part: "Whenever any such suit shall be brought by any person under clause (B) notice of the pendency of such suit shall be given to the United States by serving upon the United States attorney for the district in which such suit shall have been brought a copy of the bill of complaint and by sending, by registered mail, to the Attorney General of the United States at Washington, District of Columbia, a copy of such bill together with a disclosure in writing of substantially all evidence and information in his possession material to the effective prosecution of such suit. The United States shall have sixty days, after service as above provided, within which to enter appearance in such suit. If the United States shall fail, or decline in writing to the court, during said period of sixty days to enter any such suit, such person may carry on such suit."

after having received the requisite notice and information, it declares that

> "The court shall have no jurisdiction to proceed with any such suit * * * *whenever* it shall be made to appear that such suit was based upon evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought * * *."[7]

The Company filed a motion to dismiss on the grounds that (1) under this provision the court lacked jurisdiction to proceed since the United States possessed the information upon which the suit was based at the time it was brought, and (2) the complaint failed to state a claim upon which relief could be granted.[8] The District Court dismissed the suit on both grounds.

Relator asserts that "the gravamen of the offense"[9] upon which the suit is based is the Company's unlawful application of an order of the District of Columbia Public Utilities Commission approving and making effective a new and higher schedule of rates for electric service. These are the pertinent circumstances developed by the pleadings and the extensive affidavits.

In May 1948, the Company applied to the Commission for approval of the new schedule. After a hearing in which the United States intervened and actively participated as a large consumer of the Company's services, the new schedule was approved by the Commission which ordered that "it be made effective on all meter readings made on or after July 21, 1948." Thereafter the United States and the Company entered into a new contract, submitted by United States procurement officers, based upon the new schedules of higher rates and superseding all prior agreements as of July 21.

Meters, for measuring consumption of electrical energy, are located on the premises of all Company customers. It was obviously impossible for the Company to read all these meters on the single day of July 21 so that bills could be issued at the old lesser rates for energy consumed before that date and at the new higher rates for energy consumed after that date. Instead, the usual practice of reading all meters within a period of one month was followed. Since each meter records only the total consumption figure, it is necessary to subtract the last previous reading in order to determine the amount used during the monthly period since the last previous reading. Thus meter readings taken after July 21 which required subtraction of a last previous reading before that date necessarily included some period of time before that date. To all such readings, including those from meters of the United States, the Company applied the new schedule of higher rates just as it had applied new schedules of lower rates under ten previous orders of the Commission during the period 1933 to 1943. And, according to the affidavit of its chairman, James H. Flanagan, the Commission intended that its order be applied and interpreted in this manner. Certainly, the customary manner in which such readings are made must have been contemplated by the Commission when it made "meter readings" beginning July 21 the touchstone of charges at the new rate.

As plainly appears from our recital of the pertinent circumstances, all of the information upon which the suit was based was "* * * in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought." [10] Apart from any knowledge the United States may be charged with through its procurement

---

7. 31 U.S.C.A. § 232(C). Emphasis supplied.

8. This motion was filed after the Company had answered and a pre-trial order framing the issues had been entered. It also included an alternative request for summary judgment which the court found unnecessary to pass upon in view of the dismissal.

9. Relator's Brief on Appeal, p. 20.

10. 31 U.S.C.A. § 232(C).

officers, it is clear that the application and interpretation of the Commission's order was known to the Government through the District of Columbia Public Utilities Commission, one of its own agencies. Hence, the court had "no jurisdiction to proceed with any such suit."[11]

Relator contends that this jurisdictional attack is not available to the person sued but only to the Attorney General upon intervention of the United States. We cannot agree. The argument that the Attorney General is in the "best position to know" what information was in the possession of the United States provides no valid basis, in our opinion, for restricting the person sued from making that showing if he can. No such restriction is imposed by the terms of the statute and it is at odds with the statutory scheme and purpose. Under § 232(E)(1) the informer's only interest by way of "fair and reasonable compensation" from any recovery depends solely upon his "disclosure of the information or evidence not in the possession of the United States when such suit was brought." To allow the suit to continue after it appears from any source that he can have no such interest would result in his conduct of litigation solely for the United States. The provision stripping the court of jurisdiction "whenever" this lack of interest appears, demonstrates that Congress never intended any such result to follow failure or declination of the United States to enter the suit.

A like view of the statute was expressed in the course of the opinion in United States v. Pittman,[12] holding that the person sued could not attack the jurisdiction of the court to proceed with the suit if the United States had intervened and asserted a purpose to carry it on. The court said, "It is when the United States fails to adopt or

prosecute the suit, and the relator carries it on, that the defendants may raise an issue with the relator as to the merit of his activity in bringing it, and on this collateral issue may defeat it utterly. * * * [T]he denial of jurisdiction under the stated circumstances is intended to apply only to suits carried on by the relator, and not to those taken over (instead of bringing a new suit) by the United States."[13]

Since we sustain the court below on jurisdictional grounds, there is no need to consider the second ground for its dismissal of the suit.

Affirmed.

---

11. Ibid.

12. 5 Cir., 1945, 151 F.2d 851, 853, certiorari denied, 1946, 328 U.S. 843, 66 S.Ct. 1022, 90 L.Ed. 1617.

13. Id., 151 F.2d at page 853.