**UNITED STATES ex rel. BAYARSKY v. BROOKS et al.**

Civ. No. 1956.

United States District Court
D. New Jersey.

Jan. 31, 1953.

---

William M. Lytle and E. Leo Backus, Washington, D. C., Grover C. Richman, Jr., U. S. Atty., and Roger M. Yancey, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Milton, McNulty & Augelli, by Thomas McNulty, Jersey City, N. J., for various defendants.

Lawrence Diamond, Paterson, N. J., for Lawrence Kramer.

David Bayarsky, pro se, and Charles J. Margiotti, Pittsburgh, Pa., on the brief, for relator.

FOLLMER, District Judge.

This is a qui tam action brought under the False Claims Act, R.S. §§ 3490–3494, 31 U.S.C.A. §§ 231–235. It was filed on January 5, 1942, by David Bayarsky in his own behalf and on behalf of the United States. On March 11, 1944, the United States entered its appearance in the suit. On March 4, 1952, shortly before the matter was reached for trial, the United States and the respective defendants entered into a compromise settlement of the case whereby, the defendants, in consideration of dis

missal by the United States of the instant suit, and the case of the United States v. Adametz, et al., Civil Action 2914 (D.C.N. J.) an independent suit filed by the United States in its own name on May 19, 1943, on the identical claim, agreed to, and did, pay to the United States the sum of $225,-000. Following the settlement of the claim as above stated, the Court set the matter down for hearing on the sole question concerning the claim of an alleged informer for an informer's fee as provided by the False Claims Statute, supra.

At this hearing on July 16, 1952, claimant David Bayarsky, a lawyer, appeared pro se, also testifying as a witness in his own behalf. Lawrence Kramer, although not a party to this action, but who lays claim and entitlement to an informer's fee under the statute, appeared as a witness for the Government. Kramer was represented by counsel, and in view of his apparent adverse interest was permitted by the Court, without objection by any of the parties, to be examined by his counsel in open court, and to give such testimony as he had to present.

From the files of the case and the testimony adduced at the hearing on the question of informer's fee, and after due consideration of the briefs and argument of counsel, I make the following:

### Findings of Fact

1. The events leading up to the filing of the suit commenced in late 1935. At that time, to wit, in December 1935, one Lawrence Kramer requested the WPA through Elias Dort, then Director of Investigation, WPA, to investigate his complaint that stone supplied to WPA by his father, Philip Kramer (now deceased), operator of a stone quarry at Paterson, New Jersey, had been rejected because of his father's refusal to contribute to a vendors' ring formed by sand and stone producers and dealers in the area for the purpose of fixing prices on bids to WPA, and to exact money from members of the ring to be used to bribe various unnamed officials.

2. As a result of the aforementioned complaint of Lawrence Kramer, a full scale WPA investigation was undertaken. The investigation was commenced with an interview of the said Kramer in December 1935 by WPA Investigator, Richard L. Snider. At said interview Kramer furnished Snider with various leads concerning witnesses and individuals who would be able to furnish the Government with greater detail concerning the alleged improper activities in question. From time to time thereafter, Kramer collaborated with the said Snider in the pursuance of the investigation in the same manner above mentioned.

3. As a result of the aforesaid WPA investigation, the defendants herein were indicted in 1938 (Criminal No. 8516b, D.C. N.J.). In December 1941, twenty-five of the said defendants entered pleas of guilty and were fined sums aggregating $20,000. The remaining defendants entered pleas of not guilty, and on January 5, 1942, orders for nolle prosequi were entered with respect to them.

4. On the same date, to wit, January 5, 1942, the instant suit was filed by David Bayarsky as a qui tam action in his own behalf and on behalf of the United States. The allegations in the complaint filed by Bayarsky were identical in substantial part with the allegations contained in the criminal indictment.

5. The said Bayarsky furnished no information, data, or assistance to the United States before the commencement of the instant suit, or the appearance therein by the United States, nor indeed for a period of at least six years after said appearance by the United States.

6. On December 23, 1943, Public Law 213, 57 Stat. 608, 31 U.S.C.A. § 232, amending the False Claims Statute was enacted. On that date, the instant civil suit had not progressed beyond the filing of the answers of certain defendants and the entry of an order on May 28, 1943, requiring the relator, Bayarsky, to furnish a bill of particulars to one of the defendants.

7. On January 11, 1944, the District Court, pursuant to Clause (D) of Public Law 213, stayed all proceedings in this civil action and notified the Attorney General of its pendency. Thereafter, on March 11, 1944, the United States entered its appear-

ance in the suit within the 60-day period prescribed in Public Law 213.

8. On March 28, 1944, the relator filed a motion to strike the Government's entry of appearance, contending that Public Law 213 was unconstitutional. After a hearing and the submission of briefs, the District Court reserved decision on the motion.

9. On September 20, 1944, certain defendants moved to dismiss the action on the ground that it was based upon information which had been in the Government's possession when the suit was brought, and that, therefore, the provisions of Public Law 213 had deprived the Court of jurisdiction over it. On January 17, 1945, the Court handed down an opinion granting the defendants' motion. United States ex rel. Bayarsky v. Brooks, D.C. N.J., 58 F.Supp. 714. Thereafter, the defendants who had not joined in the motion filed similar motions to dismiss the suit. On March 6, 1945, the Court entered an order abating the action as to all defendants for want of jurisdiction.

10. On April 13, 1945, the United States filed a Notice of Appeal from the order of the court below. On March 7, 1946, the order of the court below was reversed by the Court of Appeals for the Third Circuit, United States ex rel. Bayarsky v. Brooks, 154 F.2d 344.

11. The defendants filed petition for certiorari to the United States Supreme Court. On October 14, 1946, the Supreme Court denied certiorari, Brooks v. United States ex rel. Bayarsky, 329 U.S. 716, 67 S.Ct. 47, 91 L.Ed. 621.

12. On May 29, 1947, the relator Bayarsky withdrew his pending motion to strike the Government's entry of appearance.

## Discussion

The plaintiff, Bayarsky, contends:

1. That, under Revised Statutes, § 3491, once the Relator has filed a qui tam action his right to share in the proceeds of any recovery becomes vested and can not be divested by any subsequent legislation.

2. That, in the alternative, without waiving or prejudicing relator's claim that he has a vested right to fifty per-cent of any recovery, relator, under Public Law 213(E) (1) and (2), is entitled to an award by this Court of fair and reasonable compensation for disclosure of the "Brooks statement", information or evidence which was not in the possession of the United States when suit was brought.

The plaintiff's contentions will be considered in their inverse order.

The legislative history of the False Claims Act, from the date of the enactment of the original law, March 2, 1863, with its Civil War background, down through the period of "races to the courthouses by informers anxious to secure shares of possible recoveries", culminating in United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443, and the consequent amendment of December 23, 1943, has been fully and clearly discussed in United States ex rel. Bayarsky v. Brooks, supra.[1]

On January 17, 1945, this Court, speaking through Judge Meaney, in a written opinion, 58 F.Supp. 714, held that the Bayarsky qui tam action had abated pursuant to the amendment of December 23, 1943, 31 U.S.C.A. § 232,[2] and was therefore subject to dismissal. An essential in-

1. See also United States v. Pittman, 5 Cir., 151 F.2d 851.

2. The pertinent portion of the Act reads as follows:

"(C) * * * The court shall have no jurisdiction to proceed with any such suit brought under clause (B) or pending suit brought under this section whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought: *Provided, however,* That no abatement shall be had as to a suit pending on December 23, 1943, if before such suit was filed such person had in his possession and voluntarily disclosed to the Attorney General substantial evidence and information which was not theretofore in the possession of the Department of Justice."

gredient of this determination and order of dismissal was the finding by the Court that the relator, Bayarsky, had furnished no original information to the United States at the time he filed the suit. Had the contrary been true, the action would not have abated, and the complaint could not have been dismissed. Although this case was appealed and reversed on other grounds, United States ex rel. Bayarsky v. Brooks, supra, certiorari denied 329 U.S. 716, 67 S.Ct. 47, 91 L.Ed. 621, the decision of the District Court in so far as it relates to the Bayarsky qui tam action as such, has never been reversed, and therefore on the question as to whether Bayarsky furnished original information to the United States at the time he filed suit may therefore be considered under the principle of res adjudicata, as having been adjudicated adversely to Bayarsky. The determination of this issue, however, does not depend upon that finding.

■ On the one hearing before the writer of this opinion, July 16, 1952, while testifying in his own behalf and although afforded every opportunity to make full and complete presentation in support of his claim for an informer's fee, the Relator—Bayarsky, not only offered no proof in connection with the transaction in question, but repeatedly asserted that his sole contribution to the case was the mere filing of a complaint. The record is completely devoid of any factual basis for finding that any disclosure relative to the so-called "Brooks statement" had been made prior to the institution of this suit or prior to the entry of appearance therein by the United States, regardless of the content of the statement or whether the same was in the possession of the United States at such time or times.

Bayarsky offered to prove that in 1950 he had submitted to the government the so called "Brooks statement". The government objected on the ground that the information was not furnished to it before the suit was filed. I sustained the objection.

It is quite true that at the time of the institution of the original suit by Bayarsky, there was no such requirement in the statute. However, the Amendment of December 23, 1943, specifically provides "That no abatement shall be had as to a suit pending on December 23, 1943, *if before such suit was filed* such person had in his possession and voluntarily disclosed to the Attorney General substantial evidence and information which was not theretofore in the possession of the Department of Justice." (Emphasis supplied.)

As above indicated the original action was instituted January 5, 1942, the United States entered its appearance therein on March 11, 1944. The amending act of December 23, 1943, further provides, "If the United States within said period (sixty days) shall enter appearance in such suit the same shall be carried on solely by the United States. In carrying on such suit the United States shall not be bound by any action taken by the person who brought it, and may proceed in all respects as if it were instituting the suit: * * *."

Bayarsky's offer related to a proffer of information in 1950, or six years after the entry of appearance by the United States. Even assuming that so far as the government is concerned, the date of the institution of the suit may be considered to be the date of its appearance, the proffer was not made until six years thereafter. By no line of reasoning can it be said that Bayarsky had, before suit was filed, in his possession and voluntarily disclosed to the Attorney General substantial evidence and information which was not theretofore in the possession of the Department of Justice.

Whether or not there did exist a Brooks statement, and whether or not if it did exist it contained information not already in the possession of the government, and whether or not assuming both of said premises, Bayarsky did offer to make the same available to the government in 1950, in view of the explicit provision of the statute, is not pertinent and need not be decided here.

Secondly. Did the Relator, by the mere filing of his qui tam action, secure a vested right to share in the proceeds of any recovery which could not be divested by any subsequent legislation?

■ It was, as above indicated, to bring to an end the unseemly "races to the court-

houses" antics in qui tam cases that Congress passed the Amendment of 1943. This Act forthwith abolished all qui tam actions, including those pending at the effective date of the Act, wherein it was shown that the qui tam plaintiff's only contribution was the mere filing of the complaint.[3]

■ The picture here might have been very different had the qui tam plaintiff been Lawrence Kramer rather than David Bayarsky. I have found as a fact that Kramer was not only the original spark that set the investigation in motion which has resulted in twenty-five guilty pleas, an aggregate of $20,000 in fines, and a civil recovery to the United States in the sum of $225,000, but that he continued to collaborate with the investigators furnishing various leads, all of which made more possible the results above indicated. Although Kramer does lay claim to an informer's fee under the statute, he was not the person "who brought such suit" as required by the statute, and therefore unfortunately his claim is not within the jurisdiction of this Court.

Contrasting this performance with Bayarsky's total and complete non-performance, other than an alert capitalization upon an opportunity to get something for nothing by filing his complaint from data secured from the indictments, which were made possible by Kramer's contribution, is not only ironic but proof conclusive of the wisdom of the amendment.

In view of our finding above that this Relator made absolutely no contribution other than to file from data he had previously secured from the indictment, this would ordinarily suffice to dispose of this qui tam action as such. However, where pursuant to Sections (C) and (D) [4] of the amending Act the United States had taken steps to intervene in the case, and to assume direct control thereof, an exception was made. While providing that under such circumstances the case will no longer be considered a qui tam action, but a suit by the United States, to be treated as though originally instituted and processed by the United States, it does protect the interests of bona fide and legitimate informers in cases where the United States intervenes.[5] This relief, again, is predi-

---

3. See Note 2.

4. "(C) Whenever any such suit shall be brought by any person under clause (B) notice of the pendency of such suit shall be given to the United States by serving upon the United States attorney for the district in which such suit shall have been brought a copy of the bill of complaint and by sending, by registered mail, to the Attorney General of the United States at Washington, District of Columbia, a copy of such bill together with a disclosure in writing of substantially all evidence and information in his possession material to the effective prosecution of such suit. The United States shall have sixty days, after service as above provided, within which to enter appearance in such suit. If the United States shall fail, or decline in writing to the court, during said period of sixty days to enter any such suit, such person may carry on such suit. *If the United States within said period shall enter appearance in such suit the same shall be carried on solely by the United States. In carrying on such suit the United States shall not be bound by any action taken by the person who brought it, and may proceed in all respects as if it were in-* *stituting the suit: Provided,* That if the United States shall fail to carry on such suit with due diligence within a period of six months from the date of its appearance therein, or within such additional time as the court after notice may allow, such suit may be carried on by the person bringing the same in accordance with clause (B) above. * * * (Emphasis supplied.)

"(D) In any suit whether or not on appeal pending on December 23, 1943, brought under this section, the court in which such suit is pending shall stay all further proceedings, and shall forthwith cause written notice, by registered mail, to be given the Attorney General that such suit is pending, and the Attorney General shall have sixty days from the date of such notice to appear and carry on such suit in accordance with clause (C)."

5. Public Law 213, supra, amending the False Claims Statute, provides in pertinent part:

"(E) (1) In any such suit, if carried on by the United States as herein provided, the court *may award* to the person *who brought such suit,* out of the proceeds of such suit or any settlement of

cated on the disclosure of "information or evidence not in the possession of the United States when such suit was brought."

There can be no question as to the constitutionality of the Act or its applicability to the facts of this case. In United States ex rel. Rodriguez v. Weekly Publications, Inc., 2 Cir., 1944, 144 F.2d 186, 188,[6] under facts similar to those in this case, the Court stated:

"In spite of the fact that we shall dismiss the appeal, because the order was not appealable, it seems proper to say, for the guidance of the District Court in future actions, that the claim of the relator that the amendment to the Informers' Act, if applied to him, would unlawfully deprive him of rights guaranteed by the Constitution can have no basis. The relator acquired no vested right prior to the date of the amendment. His privilege of conducting the suit on behalf of the United States and sharing in the proceeds of any judgment recovered, was an award of statutory creation which, prior to final judgment, was wholly within the control of Congress. * * * It is well settled that the repeal of a statute under which a suit for a penalty is brought terminates the plaintiff's right to recover. The amendment to the Informers' Act was adopted to correct abuses which had arisen under the original act and were referred to in United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443. While the relator may have made investigations and furnished valuable information and evidence to the government he only brought the suit just prior to the effective date of the amendment. The Informers' Act made the successful prosecution

of the suit, rather that the discovery of fraudulent conduct, the test of the right to share in any recovery. United States ex rel. Marcus v. Hess, 317 U.S. 537, 545, 63 S.Ct. 379, 87 L.Ed. 443. He had only just started the present suit when the amendment limiting his rights of recovery was enacted. It provided reasonable compensation, to be fixed by the court with a maximum statutory limit, for anything he might do or might have done in aid of the government, in place of the former award of 50% of any sums recovered. We regard the claim that the act as applied to the relator is unconstitutional as wholly illusory."

On May 25, 1945, the same Court in Sherr v. Anaconda Wire & Cable Co., 2 Cir., 149 F.2d 680, 681, reaffirmed its position in the Rodriguez case, upholding the constitutionality of the Act of 1943. The Court held, inter alia:

"* * * the bare question before us is whether the act is unconstitutional as a violation of the Fifth Amendment. The argument is that § 232, as it stood when the plaintiff brought the action, was an offer, of which the mere filing of the complaint was an acceptance, and that the contract so arising was 'property,' which 'vested' in the plaintiff, and which the Constitution put it beyond the power of Congress to divest. We by no means agree that the contract—if there was one, which in turn we do not say that there was—created the kind of property which the Fifth Amendment protects (certainly when, as here, the informer had done nothing more than file the complaint); * * *."

Finally, the Court of Appeals in United States ex rel. Bayarsky v. Brooks, supra,

---

any claim involved therein, which shall be collected, an amount which in the judgment of the court is fair and reasonable compensation to such person for *disclosure of the information or evidence not in the possession of the United States when such suit was brought.* Any such award shall in no event exceed one-tenth of the proceeds of such suit or any settlement thereof." (Emphasis supplied.)

6. In the Rodriguez case, supra, suit was instituted November 18, 1943, while the date of the amendment was December 23, 1943. In the instant case the informer's suit was filed January 5, 1942, but nothing material transpired in the interim.

in upholding the constitutionality of the Act, established the law of the case for this circuit.

### Conclusions of Law

1. The Court has jurisdiction of this cause of action and over the parties thereto.

2. The Amending Act of December 23, 1943, Public Law 213, 57 Stat. 608, 31 U.S.C.A. § 232, is constitutional.

3. David Bayarsky is not entitled to an informer's fee under the applicable statute since he did not disclose any "information or evidence not in the possession of the United States when such suit was brought", nor is the said Bayarsky entitled to costs herein.

4. The United States has right and entitlement to the full amount of the compromise settlement totalling $225,000, herein entered into between the United States and the defendants, and accordingly, the said sum is due and payable to the United States in its entirety.