**Marshall P. SAFIR, Appellant,**

v.

**Juanita M. KREPS, Individually and as Secretary of Commerce, et al.**

**No. 75–2050.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 27, 1976.
Decided Feb. 11, 1977.

---

Marshall P. Safir, appellant *pro se.*

Richard A. Olderman, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and William Kanter, Atty., Dept. of Justice, Washington, D. C., were on the brief, for federal appellees. Barbara L. Herwig, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for federal appellees.

Robert T. Basseches and Daniel H. Margolis, Washington, D. C., with whom Warren L. Lewis, Washington, D. C., was on the brief, for intervenors-appellees American President Lines, Ltd., Prudential Lines, Inc., and PSS Steamship Co., Inc.; Verne W. Vance Jr., Boston, Mass., was on the brief for intervenor-appellee Farrell Lines, Inc.

J. Franklin Fort, Washington, D. C., with whom T. S. L. Perlman and William H. Fort, Washington, D. C., were on the brief, for intervenors-appellees Lykes Bros. Steamship Lines, Inc. and Moore-McCormack Lines, Inc.

James N. Jacobi, Washington, D. C., was on the brief for intervenor-appellee American Export Lines, Inc.

Elmer C. Maddy, New York City, was on the brief for intervenor-appellee United States Lines, Inc.

Before WRIGHT, McGOWAN and Mac-KINNON, Circuit Judges.

Opinion for the court filed by J. SKELLY WRIGHT, Circuit Judge.

J. SKELLY WRIGHT, Circuit Judge:

This case involves the most recent episode in a ten-year battle by appellant, Marshall P. Safir, to force the United States Government, acting at various times through the Maritime Subsidy Board, the Maritime Administrator, and the Secretary of Commerce, to recover construction differential subsidies and operating differential subsidies paid to various shipping companies collectively called the Atlantic and Gulf American Flag Berth Operators (AGAFBO). At this stage in the proceedings appellant has won decisions in the Second Circuit forcing the Maritime Administrator to take action on appellant's claims, *Safir v. Gibson,* 417 F.2d 972 (2d Cir. 1969) (*Safir I*), and further holding that the AGAFBO lines are estopped from relitigating a finding of the Federal Maritime Commission that the lines engaged in predatory behavior against appellant's steamship company, Sapphire Steamship Lines, Inc., *Safir v. Gibson,* 432 F.2d 137 (2d Cir.), *cert. denied,* 400 U.S. 850, 91 S.Ct. 57, 27 L.Ed.2d 88 (1970) (*Safir II*). *Safir I* also established that Section 810 of the Merchant Marine Act of 1936, 46 U.S.C. § 1227 (1970), which prohibits payment of subsidies to lines engaging in predatory practices, also allows the United States to seek recovery of subsidies paid to shipping lines during the period of their predatory behavior but before it is discovered. *Safir I* at 977. The Maritime Subsidy Board has now rendered an opinion, *Investigation of Alleged Section 810 Violation,* 3 Maritime Subsidy Board Reports 128 (1973) (interim order), Supp.App. 160, —— Maritime Subsidy Board Reports ——, 14 P & F Shipping Regulation Reports 77 (1973) (final order), JA 33, requiring various amounts of operating differential subsidies to be recovered from lines in direct competition with Sapphire Steamship Lines, Inc. (the "Trade intervenors"), but exonerating certain other AGAFBO members (the "Non-Trade intervenors"). This decision was appealed by the AGAFBO lines to the Secretary of Commerce who, in an order dated September 9, 1974, JA 2, affirmed the Board in all respects except that he further mitigated the amount of subsidy to be recovered from the Trade intervenors.[1]

Directly at issue here is an order of the District Court denying appellant's motion

---

1. Further elaboration of the facts of this case may be found in *Safir I* and *Safir II.*

**450**

for summary judgment and granting appellees' and intervenors' motions for summary judgment.[2] We reverse and remand this case to the District Court for further proceedings as indicated in this opinion.

At the outset, a word is in order about the general approach which ought to be taken to this case. As all parties are well aware, the administrative proceedings sought to be reviewed here would never have been instituted in the absence of the Second Circuit's decision in *Safir I.* And, although that court did not order the precise form of proceedings which have been conducted here,[3] it indicated that comparable proceedings would have been ordered in the absence of voluntary action intended to discharge the obligation of the Maritime Administrator "to make a considered decision whether to recover the subsidies paid in the past," *Safir I* at 978. *See Safir II* at 144. The vagaries of the form and venue of proceedings for judicial review of administrative action should not, therefore, be allowed to obscure the fact that the central issue here is whether the mandate of the Second Circuit has been discharged. Nor should the discontinuous nature of the judicial proceedings or the change of forum from New York to Washington cloud the fact that we are here dealing for all practical purposes with a single continuing lawsuit. For this reason we think it inappropriate to reopen issues which have been resolved by the Second Circuit unless there has been a supervening change of law or fact which makes the prior resolution of an issue plainly erroneous.

I

We now take up *seriatim* issues raised by the intervening Trade and Non-Trade Lines and the Secretary of Commerce in support of their respective motions for summary judgment. We deal here only with those points raised on appeal, assuming that points raised below but not pressed here have been abandoned by the parties.

■ 1. *Appellant's Standing.* The standing issue has already been litigated in *Safir I,* a suit brought by three parties: appellant Safir, his partner Arnold Weissberger, and Sapphire Steamship Lines. Read literally, that opinion affords standing only to Sapphire. *See Safir I* at 977. However, we think such a limited construction is unwarranted. The only evidence of an essential point—that Sapphire "ha[d] not washed [its] hands of the business," *id.* at 978—was Safir's affidavit that "he desired to return to the shipping business as soon as possible." *Id.* Nor do we think much can be made of the characterization of Sapphire as the "victim" of the predatory practices since it is now clear, as it apparently was not at the time of *Safir I,* that Sapphire's financial losses have been transferred at least in part to Safir in his capacity as personal guarantor of many of Sapphire's debts. Moreover, we find no evidence at all that the Second Circuit intended to distinguish between the corporate entity—Sapphire—and its co-owners for purposes of standing. If it had intended to do so, it should have dismissed the claims of both appellant Safir and his partner Weissberger in *Safir I* and again in *Safir II,* but this it did not do. We hold, therefore, that *Safir I* established as of 1969 appellant's standing to sue to force the Maritime Administrator to make a "considered decision" on whether to seek recoveries. We further hold that implicit in the grant of standing in *Safir I* is a further grant of standing to seek judicial review of the decision of the Administrator (or Secretary of Commerce) once it was made.

Our inquiry is not finished by an examination of the scope of *Safir I,* however, because there has been a major clarification of the meaning of standing under Section 10 of the Administrative Procedure Act, 5 U.S.C. § 702 (1970), since *Safir I* was decid-

---

**2.** Appellees also made motions to dismiss. All motions before the District Court were treated as motions for summary judgment, *see* Order of Judge Bryant, JA 1, and we adopt this nomenclature herein.

**3.** *See* 551 F.2d at 454, *infra.*

ed. In *Ass'n of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), the Supreme Court announced a two-part test for standing to challenge administrative action: first, "whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise," *id.* at 152, 90 S.Ct. at 829; and, second, "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question," *id.* 397 U.S. at 153, 90 S.Ct. at 830. Subsequent cases put a gloss on these requirements. Of particular importance here is the decision in *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), in which the Court added the requirement that "the plaintiff who seeks to invoke judicial power stand to profit in some personal interest [if he wins the suit]." 426 U.S. at 39, 96 S.Ct. at 1925.

Although the *Safir I* court did not phrase its standing opinion in the above terms, we think Safir's standing under subsequently announced law nonetheless follows from what was said in *Safir I. Safir I* holds that Section 810 of the Merchant Marine Act of 1936, 46 U.S.C. § 1227 (1970), was intended by Congress "to promote the competitive interest of a victim by authorizing the recovery of subsidies improperly paid in the past * * *." *Safir I* at 978. From this language it is clear that, if Safir still has a competitive interest, it is one within the "zone of interests" protected by Section 810, and the second *Data Processing* standing requirement is met. The Second Circuit's analysis of the congressional history of Section 810 also establishes that Congress thought potential competitors would benefit from recovery of subsidy payments since such recovery "poses an added cost on the violators and thus will partially make up to the victim for the burden which the earlier payments indirectly imposed on him." *Id.* at 977 (footnote omitted). We do not think either *Data Processing* or *Simon* requires appellant to demonstrate the truth of the above proposition. It is enough if

Congress thought a victim would "profit" through recovery of illegally paid subsidies and consequently failure of the Maritime Administrator to extend the intended benefit to a victim is injury in fact. Again, however, Safir must continue to be a potential competitor of the shipping lines which illegally took the subsidies if he is to benefit from a decision to recover such subsidies.

■ For the foregoing reasons, the three standing issues come down to one: Is Safir a potential competitor of the Trade and Non-Trade Lines? We begin by restating that *Safir I* established that Safir had this status in 1969. *See* 179 U.S.App.D.C. ————, 551 F.2d at 450–451 *supra.* Appellant's desire to re-enter the shipping business has apparently not changed, *see* Complaint ¶ 3, Supp. App. 250, and appellees and intervenors here have pointed to no change in circumstances which would cause us to question the conclusion of the Second Circuit that "an interruption of operations like that here does not sufficiently alter the victim's interest to take it out of the protection of § 810 * * *." *Safir I* at 978. Moreover, for us to hold today that the Secretary of Commerce can divest a person in appellant's position of standing simply by footdragging would scarcely serve the interests of Congress or the Constitution. After all, the Secretary's initial and allegedly continuing unwillingness to protect Safir's interests may well be a contributing factor to Safir's inability to re-enter the shipping business—certainly Congress (in the Second Circuit's view) thought that prompt termination and recovery of subsidies would be of material assistance to the victim of predation. Nor do we see how any Article III purpose would be served by refusing Safir a forum in which he might contest the adequacy of the Secretary's compliance with an unquestionably valid order of the Second Circuit, especially where the only apparent ground for such refusal would be delay caused by the very dilatoriness of the Secretary and the Administrator which led to the initial suit. For all of the above reasons, therefore, we decline to hold

that the passage of time has removed appellant's standing to prosecute this action.[4]

■ 2. *Exhaustion of Administrative Remedies.* The United States argues that appellant Safir's failure to participate in the review proceedings before the Secretary of Commerce should act as a bar to relief in the District Court. We disagree, finding this argument to be prematurely raised.

It appears that appellant participated fully in the proceedings before the administrative law judge (ALJ) and the Maritime Subsidy Board in Docket No. S–243, which is here under review. Upon entry of the final order of the Board, appellant turned to the District Court for review. Intervenors, on the other hand, petitioned the Secretary of Commerce for further administrative review of the Board's order under procedures set out in 46 C.F.R. § 202.1 (1976). The Secretary granted intervenors' petitions and, as a result, the District Court dismissed Safir's complaint as premature. *Safir v. Dent,* No. 2156–73 (D.D.C. May 9, 1974), *aff'd,* No. 74–1716 (D.C.Cir. Feb. 18, 1975) (Supp.App. 246, 256).

The failure of Safir to appear before the Secretary does not in itself require dismissal of this petition for review. Administrative review before the Secretary is nowhere made mandatory. It is a matter of grace, not right, as the language of the regulation itself evidences: "The Secretary * * * *may,* on his own motion or on the basis of a petition filed as hereinafter provided, review any decision, report and/or order of the Maritime Subsidy Board * * *." 46 C.F.R. § 202.1 (¶ 6.01) (emphasis added). In addition, there is no requirement that parties participate in any review proceedings that the Secretary has established. Although all parties of record are served with the petitions for review, the regulation states that parties so served "*may* file replies in writing thereto," *id.* (emphasis added), not that they must. Finally, there can be no doubt that Safir has protected his right to seek judicial review by filing a complaint in the District Court which would have been timely but for its ultimate prematurity.

■ Nonetheless, appellant is not free to raise points without regard to whether they were argued at some stage of the administrative process. While an exhaustion requirement is not codified in the Merchant Marine Act, it is a generally recognized common law principle. *See, e.g.,* 3 K. Davis, Administrative Law Treatise § 20.01, at 56–57 (1958); L. Jaffe, Judicial Control of Administrative Action 424 (1965). The purpose of exhaustion—to allow an agency "to consider [a] matter, make its ruling, and state the reasons for its action," *Unemployment Comm'n v. Aragon,* 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946), so that it will have "an opportunity to correct [any] error, if error there be," *Brotherhood of R.R. Trainmen v. Chicago, M., St. P. & Pac. R. Co.,* 127 U.S.App.D.C. 58, 380 F.2d 605, 608, *cert. denied,* 389 U.S. 928, 88 S.Ct. 289, 19 L.Ed.2d 279 (1967)—is narrow, however. So long as the appellant or some other party has put an objection on the record, the obligation to exhaust is discharged. This is especially so at the stage of secretarial review since such review is carried out on the record already made. In particular, the Secretary must be charged with notice of objections raised in prior administrative or judicial proceedings.

Applying this principle to the issues raised on this appeal, we hold that there has been no demonstration that appellant has failed to raise below all issues now in contention. As we understand the present state of affairs, all appellant Safir has so far proffered for decision is the narrow question whether there was any room under Section 810 for discretionary reduction of amounts of operating and construction subsidies to be recovered. *See* Plaintiff's Motion for Summary Judgment, Supp.App. 267–268. Safir's second claim—that the Secretary has abused his discretion—is not presently before the District Court and

---

4. Because we hold today that *Safir I* established appellant Safir's personal standing to bring suit, we need not consider the effect of

§ 70 of the Bankruptcy Act, 11 U.S.C. § 110 (1970), on appellant's claim.

could not properly be so since the administrative record has not yet been filed with that court. On the narrow issue of discretion, there can be no doubt that the Secretary and every party here had adequate notice of Safir's contentions. These contentions were the subject of *Safir I* and *Safir II*. The briefs in these cases were certainly available to the Secretary since his agent, the Maritime Administrator, was a defendant in both suits. The opinions of the Second Circuit are a matter of public record and well known to all involved. It appears that Safir also presented these claims to the A.L.J. and to the Maritime Subsidy Board. *See Investigation of Alleged Section 810 Violation, supra,* 3 Maritime Subsidy Board Reports at 141, Supp.App. 181. What more, then, was there to be said by a non-lawyer about the appropriate construction of Section 810?

There will be more than enough opportunity to raise waiver issues again once the trial court has the administrative record before it and can assess the possibility of prejudice in terms of the actual argument and evidence adduced before the ALJ and the Board. If actual prejudice appears at that time, the trial court is free to reconsider the waiver issue including any extenuating circumstances which would make imposition of an exhaustion requirement inequitable.

3. *Collateral Estoppel or Res Judicata.* We agree with appellees' position that appellant may not relitigate questions that were actually decided in either *Safir I* or *Safir II.* We disagree, however, with appellees' contention that the holdings of these cases are sufficiently broad to warrant dismissal of appellant's complaint. Two issues were raised in *Safir I:* whether Safir had standing, and, if so, whether the Administrator's decision not to seek refunds of subsidies paid was a matter "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2) (1970) and therefore unreviewable. Both issues were decided in Safir's favor; however, only the second is relevant here. On the discretion point the *Safir I* court held that the Maritime Administrator

could not "refuse to proceed against the AGAFBO lines without at least considering the interest of the victim, about which Congress was so concerned," and that he "was at least required to make a considered decision whether to recover the subsidies paid in the past." *Safir I* at 978. *Safir I* thus indisputably rejected the Administrator's extreme position that his decision whether or not to seek recovery was unreviewably committed to his discretion. This holding is consistent with the supervening case of *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), and consequently we do not inquire further into it.

*Safir I,* in addition to rejecting the Administrator's claim of unreviewable discretion, specifically reserved the question whether "there may be other limits on [the Administrator's] discretion" going beyond the requirement that he consider the victim's interest before deciding not to seek recovery of subsidies paid. *Safir I* at 978. However, when in *Safir II* appellant sought to test these limits by arguing that the Administrator had no discretion to do other than seek recovery of all subsidies paid to all AGAFBO members, this extreme position was rejected. In a footnote the Second Circuit stated:

> Nothing we have said should be read as preventing the Maritime Administration from investigating the nature and extent of the individual carriers' participation in the illegal action, should it find these matters relevant to its ultimate decision on whether to seek recovery of subsidies paid during the violation and, if so, how much and from whom.

*Safir II* at 145 n.2. The propriety of the Administrator's considering "the nature and extent of the individual carriers' participation" was reiterated on rehearing. *Safir II* at 146. As matters now stand, therefore, the District Court properly rejected appellant's sole contention on his motion for summary judgment that "the Secretary of Commerce, through his constituent agency, the Maritime Administration—Maritime Subsidy Board, is under a mandatory duty

to impose the inflexibile [sic] sanction of Section 810 * * * to recover all construction and operating subsidies paid * * *." Supp.App. 268.

Nevertheless, the District Court could not properly dismiss Safir's complaint as a whole since that complaint is not limited to the sweeping claim that the Secretary lacked any discretion to demand recovery of less than the full amount of subsidies paid.[5] It alleges that the Maritime Subsidy Board and the Secretary abused whatever discretion they may enjoy by arbitrarily and capriciously mitigating the penalty assessed against AGAFBO, see Complaint ¶¶ 2, 5, 6.b, Supp.App. 249, 251, and particularly questions the propriety of the Secretary's further mitigation of recoveries,[6] which was based solely on Government complicity in (and benefit from) the predatory act of the AGAFBO lines, see id. ¶ 6.b, Supp.App. 251. Litigation of this and other issues raised by Safir's complaint, such as the propriety of reducing subsidy recovery to reflect the proportion of military cargo carried by the predatory lines, and hence in direct competition with Sapphire Steamship Lines, Inc.,[7] is not barred. The propriety of considering such factors could not have been litigated before the Second Circuit because the orders announcing the Administrator's reliance on them were not entered until after Safir II. Therefore, such issues are plainly open now no matter what theory of estoppel is applied to the Second Circuit's decisions. Moreover, consistent with our view that what is really at issue here is the Administrator's (Secretary's) discharge of the Second Circuit's mandate, the general issue of the arbitrariness of the precise action taken is and must be open for review now, regardless of any discretion which the Administrator may enjoy. See Citizens to Preserve Overton Park, Inc. v. Volpe, supra.

## II

From what we have said above it should be clear that there are issues to be tried on remand. In particular, it is necessary for the trial court to determine whether the various factors other than the "extent of individual carriers' participation in the illegal action," Safir II at 145 n.2, cited by the Administrator and the Secretary as justifying mitigation can properly be considered, given the purpose and legislative history of Section 810 and its construction in other cases. In other words, the issue reserved by the Second Circuit in Safir I—the precise limits on the Administrator's (Secretary's) discretion not to seek recovery of all subsidies paid—must now be decided. If it is decided that all the cited factors could lawfully be considered, the trial court must further determine whether the Administrator (Secretary) acted arbitrarily or capriciously, or abused his discretion in this case, given the facts developed in the hearing before the ALJ. See Citizens to Preserve Overton Park, Inc. v. Volpe, supra; Dunlop v. Bachowski, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975).

If it becomes necessary for the District Court to review the facts found by the Maritime Subsidy Board or the Secretary, it will first have to determine whether the appropriate standard of review is substantial evidence on the record as a whole, see 5 U.S.C. § 706(2)(E), or whether the facts found must merely be free of arbitrariness or caprice, given the evidence adduced, see Dunlop v. Bachowski, supra. In making this determination, the trial court should be aware of the unusual procedural posture of this case. The hearings before the ALJ were begun "to provide a basis for recommending to the Maritime Subsidy Board * * * the appropriate action that should

---

5. Appellant apparently sought to resolve by summary judgment only issues which could be decided without examination of the administrative record, an approach ultimately sanctioned by the District Court when it consolidated and then stayed the actions brought by intervenors herein. See Order of April 10, 1975 (Docket Item No. 32).

6. Order of the Secretary of Commerce in Maritime Subsidy Board Docket S–243, Sept. 9, 1974, JA 2.

7. Investigation of Alleged Section 810 Violation, 3 Maritime Subsidy Board Reports 128, 161–167 (1973), Supp.App. 216–223.

be taken" in response to the order of the Second Circuit in *Safir I*. *See* Maritime Subsidy Board Order in Docket S–243 at 3 (Oct. 24, 1969). Ultimately, however, a final order was entered which purports to conclude an adjudication of the amounts owing. *See Investigation of Alleged Section 810 Violation,* —— Maritime Subsidy Board Reports ——, —— (1973), JA 45–46. While there is some sanction for this form of procedure in *Safir II* at 144, we would not have thought that a formal adjudication was required to discharge the obligation put on the Administrator in *Safir I*. *Cf. Dunlop v. Bachowski, supra.* In addition, no statutory provision has been called to our attention which would authorize the Secretary, Administrator, or Board to adjudicate what Judge Friendly characterized as a contract dispute. *See Safir I* at 977. Because no one has objected to the procedures adopted and because this decade-long litigation has already consumed more than enough judicial and administrative time, however, we would be strongly inclined simply to ignore the procedural anomalies of this litigation and assume with the parties that the proper procedure is quasi-adjudicative and consequently the proper standard of review is substantial evidence on the record as a whole. Nonetheless, since this is a case of first impression and since the parties have not yet addressed the standard of review issue, we leave the determination of the appropriate standard to the trial court for further examination.

### III

While we do not wish to prejudge issues more properly decided by the District Court on remand, efficiency does require us to indicate our views on one issue. The opinion of the Secretary is a document remarkable for its brevity. Brevity, however, while the soul of wit, can be the bane of judicial review. This is the case here with the Secretary's Order further reducing amounts to be recovered solely because of Government participation in and benefit from the lowering of rates to non-competitive levels. *See* Order of the Secretary of Commerce in Maritime Subsidy Board Docket S–243, JA

2. His Maritime Subsidy Board found, however, "that at best [Government] pressure was a relatively minor consideration in the trade respondents' rate reductions." *Investigation of Alleged Section 810 Violation, supra,* 3 Maritime Subsidy Board Reports at 144, Supp.App. 185. This conclusion rests on many factors, among which we find particularly persuasive testimony of the shippers' own officials that such pressure was not a factor causing rates to be reduced, *see id.* at 148 & n.36, Supp.App. 193, and the Board's astute observation that

> if the trade respondents were bowing to unrelenting pressure from the military for rate reductions, it is a curious mystery why AGAFBO members let its condemned reduced rates revert to former high levels in the very teeth of such pressure.

*Id.* at 148–149, Supp.App. 193. When these detailed and plausible findings of the Board are compared to the peremptory announcement of the Secretary that "the record indicates that the United States Government actively induced the rate reductions here in issue," JA 2, the conclusion is virtually compelled that the Secretary has simply failed to come to grips with the difficulties in the evidence in the record. Certainly the Secretary's failure to identify the evidence in support of his reversal of the Board gives little assurance that we have been presented with an order resulting from a reasoned decisionmaking process. Because of this unexplained inconsistency between the findings of the Secretary and of the Board, the trial court should carefully scrutinize the evidentiary support for the Secretary's ruling and should, if necessary, remand the record to the Secretary for clarification of his reasons for interpreting the evidence as he has. *See Camp v. Pitts,* 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *Citizens to Preserve Overton Park, Inc. v. Volpe, supra,* 401 U.S. at 415–416, 91 S.Ct. 814.

### IV

For the reasons stated above, the order of the District Court is reversed and this case

is remanded for further proceedings consistent with this opinion.[8]

*Reversed and remanded.*

---

8. Further appellate consideration of the issues raised here would be greatly facilitated if the District Court would reinstate its order of consolidation entered in Nos. 74–1474, 74–1788, and 75–0077 on March 5, 1975 (Docket Item No. 29), which was modified on April 10, 1975 (Docket Item No. 32), so that the contentions of all parties can, in the future, be disposed of at one time.