**Marshall P. SAFIR, Plaintiff-Appellant,**

v.

**Robert J. BLACKWELL, Assistant Secretary of Commerce et al., Defendants-Appellees.**

**Marshall P. SAFIR, Plaintiff-Appellant,**

v.

**AMERICAN EXPORT LINES, INC., et al., Defendants-Appellees.**

**Nos. 770, 840, Dockets 77–6219, 77–7626.**

United States Court of Appeals, Second Circuit.

Argued May 31, 1978.

Decided June 27, 1978.

Marshall P. Safir, Brooklyn, N. Y., pro se.

Gilbert S. Fleischer, Department of Justice, New York City (Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., and David G. Trager, U. S. Atty. for the Eastern District of New York, Brooklyn, N. Y., of counsel), for defendants-appellees Robert J. Blackwell, et al.

Elmer C. Maddy, New York City (Kirlin, Campbell & Keating, New York City, of counsel), for defendant-appellee United States Lines, Inc.

James N. Jacobi and Kurrus, Dyer, Jacobi & Mooers, Washington, D. C., of counsel, for defendant-appellee American Export Lines, Inc.

J. Franklin Fort, T.S.L. Perlman, William H. Fort and Kominers, Fort, Schlefer & Boyer, Washington, D. C., of counsel, for defendants-appellees Lykes Bros. Steamship Co., Inc. and Moore-McCormack Lines, Inc.

Robert T. Basseches, Washington, D. C. (Shea & Gardner, Daniel H. Margolis, Warren L. Lewis and Bergson, Borkland, Margolis & Adler, Washington, D. C., of counsel), for defendants-appellees American President Lines, Ltd., Prudential Lines, Inc., and PSS Steamship Company, Inc.

Verne W. Vance, Jr., Arthur G. Telegen and Foley, Hoag & Eliot, Boston, Mass., of counsel, for defendants-appellees Farrell Lines.

Barrett, Smith, Schapiro, Simon & Armstrong, New York City, of counsel, for defendants-appellees American President Lines, Ltd., Prudential Lines, Inc., PSS Steamship Company, Inc., and Farrell Lines, Inc.

Before FRIENDLY and TIMBERS, Circuit Judges, and HOFFMAN, District Judge.*

FRIENDLY, Circuit Judge:

Plaintiff-appellant Marshall P. Safir has been laboring for more than a decade to obtain a recovery for the United States of

* Of the District Court for the Eastern District of Virginia, sitting by designation.

subsidies alleged to have been illegally paid to members of the Atlantic and Gulf American Flag Berth Operators (AGAFBO). The Federal Maritime Commission (FMC) held, on December 8, 1967, that in 1965 AGAFBO, with the purpose of eliminating Mr. Safir's company, Sapphire Steamship Lines, Inc. (Sapphire), from competing with the conferences lines, had promulgated rates for Government cargoes in the North Atlantic trade which were so unreasonably low as to be detrimental to the commerce of the United States, contrary to the public interest, and, in consequence, violative of §§ 15 and 18(b)(5) of the Shipping Act, 1916, 46 U.S.C. §§ 814, 817(b)(5). *Rates on U. S. Government Cargoes,* Docket No. 65–13, 11 F.M.C. 263, 287. Safir then requested the appropriate government officials to recover subsidies allegedly paid illegally to AGAFBO members, on the grounds that these same discriminatorily low rates constituted a violation of § 810, Merchant Marine Act, 1936, 46 U.S.C. § 1227. These efforts proving unsuccessful, he brought a suit in 1968 in the District Court for the Eastern District of New York to prod the officials into action. Safir was rebuffed by the district court, but met with success here. *Safir v. Gibson,* 417 F.2d 972 (2 Cir. 1969), *cert. denied,* 400 U.S. 850, 91 S.Ct. 57, 27 L.Ed.2d 88 (1970) (*Safir* I).

However, the Maritime Subsidy Board decided to follow an expensive and time-consuming course which would have required relitigation of the issues of violation already determined by the FMC. When Safir sought the aid of the district court in avoiding such duplicative proceedings, the law officers of the Government opposed him and the district court agreed. Again we took a different view, both when the appeal was first heard with only the Government as appellee; and later when the subsidy recipients, who had previously abstained from participating, see 417 F.2d at 976 n. 4, intervened in the action for the purpose of seeking a rehearing. *Safir v. Gibson,* 432 F.2d 137, 145 (2 Cir.), *cert.*

*denied,* 400 U.S. 942, 91 S.Ct. 241, 27 L.Ed.2d 246 (1970) (*Safir* II). Following another resort by Safir to the Eastern District and to this court, this time unsuccessful, see *Safir v. Blackwell,* 469 F.2d 1061 (2 Cir. 1972), (*Safir* III), the Maritime Subsidy Board directed in 1973 that a total of $2,388,463.16 should be recovered from five AGAFBO lines that had been in direct competition with Sapphire. *Investigation of Alleged Section 810 Violation,* Maritime Subsidy Board S–243, 14 P&F Shipping Regul. Reptr. 77, 78 (1973). On a discretionary appeal to the Secretary of Commerce pursuant to 46 C.F.R. § 202.1 (¶ 6.01), the latter, by order dated September 9, 1974, reduced the amounts to a total of $1,126,522.26. The basis for this slash was what the Court of Appeals for the District of Columbia Circuit has called a "preemptory announcement" by the Secretary that "the record indicates that the United States Government actively induced the rate reductions here in issue," see *Safir v. Kreps,* 179 U.S.App.D.C. 261, 269, 551 F.2d 447, 455, *cert. denied,* 434 U.S. 820, 98 S.Ct. 60, 54 L.Ed.2d 76 (1977) (*Safir* IV).[1] When Safir complained to the courts of the inadequacy of the recovery, he was again opposed by the law officers of the Government. He was unsuccessful in the District Court for the District of Columbia, but the Court of Appeals, taking a different view, reversed and remanded with a direction that "the trial court should carefully scrutinize the evidentiary support for the Secretary's ruling and should, if necessary, remand the record to the Secretary for clarification of his reasons for interpreting the evidence as he has." 179 U.S.App.D.C. at 269, 551 F.2d at 455.

With this frustrating background it is understandable that Safir should have decided the time had come to place the controversy in a posture where he, rather than Government officials, would control the prosecution. The instrument he chose was

---

1. It should be made clear that the Secretary who directed the reduction was Secretary Dent, not Secretary Kreps.

the "*qui tam*" statute which empowers any person to bring and carry on a suit on behalf of the Government against anyone who has presented a claim against the United States for payment or approval, "knowing such claim to be false, fictitious, or fraudulent," 31 U.S.C. §§ 231 and 232.[2] His theory was that the steamship lines had submitted claims for subsidy, knowing that § 810 of the Merchant Marine Act, 46 U.S.C. § 1227, and the corresponding clauses in their subsidy contracts made them ineligible for subsidies while they were charging rates which violated § 15 of the Shipping Act. Safir sought to invoke the *qui tam* statute in two ways: First, he filed an action against the steamship companies on May 25, 1977. After Safir had complied with the requirements of 31 U.S.C. § 232(C) with respect to advising the Attorney General of the pending action, the United States declined to enter the suit. Second, he moved to amend his 1968 complaint against Government officials in which, as heretofore stated, the steamship lines had later intervened, so as to state a claim under the false claims statute,[3] and moved to consolidate the two actions. The steamship lines opposed the motion for leave to amend the 1968 complaint and moved for summary judgment with respect to the 1977 action. Judge Dooling denied Safir's motion for leave to amend and granted the defendants' motion for summary judgment, and these appeals followed.[4]

■ The judge stated his reasons for denying leave to amend as follows:

While, as it would be amended, the complaint would in ultimate substance add a False Claims Act Count, that count does not arise out of the matter of original complaint. The original complaint sought to compel public officers to do what plaintiff contended that it was their duty to do. The claim rested on the contrast between the FMC decision that the AGAFBO rates were unjustly discriminatory and the failure of the Maritime Administration, Maritime Subsidy Board, to take appropriate action in the light of 46 U.S.C. § 1227. The new matter would add a completely new claim both as to substantive content and as to the identity of the persons against whom relief was sought. Nothing in the original case turned on the knowing presentation of a false, fictitious or fraudulent claim. There is no basis for authorizing an amendment that would transform the case, in effect dismiss the original defendants, and pursue a completely different claim. Cf. *Rosenberg v. Martin,* 2d Cir. 1973, 478 F.2d 520, 526–27; *United States v. Templeton,* E.D.Tenn.1961, 199 F.Supp. 179, 183–84.

We can find no sound basis for disagreeing with this analysis.

The grant of summary judgment for the defendants on the 1977 complaint was based on the clause in 31 U.S.C. § 232, added by the Act of December 23, 1943, 57 Stat. 608, which reads:

The court shall have no jurisdiction to proceed with any [*qui tam*] suit * * * whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought.

---

**2.** Safir had adverted to possible resort to a *qui tam* action in the 1972 proceedings before both the district court and this court, and had specifically mentioned the possibility of a later False Claims Act claim in an affidavit, see also *Safir III, supra,* 469 F.2d at 1063, but had not pursued this.

**3.** The advantage of this course lay in the possibility of "relation back," F.R.Civ.P. 15(c), and consequent avoidance of serious difficulties with respect to the statute of limitations.

**4.** Defendants have not raised the claim that, as held in *United States v. Onan,* 190 F.2d 1, 6 (8

Cir.), *cert. denied,* 342 U.S. 869, 72 S.Ct. 112, 96 L.Ed. 654 (1951), a litigant cannot prosecute a *qui tam* action under 31 U.S.C. § 232 *pro se.* If we assume that such a claim would be well founded, the remedy would not be outright dismissal but a direction that the action be dismissed unless an attorney is retained. Compare *Phillips v. Tobin,* 548 F.2d 408, 415 (2 Cir. 1976) (stockholder's derivative action). At argument Mr. Safir expressed willingness to retain an attorney if either of the orders were reversed.

The judge concluded that the information which Safir had already furnished to Congressional committees, to the FMC and to the Maritime Administrator in the course of his long fight to have AGAFBO's predatory rates declared unlawful and to cause the government officials to recover illegally paid subsidies constituted the very evidence on which the action under the False Claims Act would depend.[5] Thus he had no need to consider the defendants' additional contentions that the 1977 action was time-barred and that their submission of subsidy claims could not be viewed as "false, fictitious or fraudulent" within the meaning of 31 U.S.C. § 231.

It is established that the "whenever it shall be made to appear" defense to a *qui tam* suit being prosecuted by the relator may be made not only by the United States but by a defendant. *United States ex rel. Leslie v. Potomac Electric Power Co.*, 93 U.S.App.D.C. 108, 110, 208 F.2d 39, 40 (1953); *United States v. Pittman*, 151 F.2d 851, 853 (5 Cir. 1945) (dictum), *cert. denied*, 328 U.S. 843, 66 S.Ct. 1022, 90 L.Ed. 1617 (1946). The leading court of appeals decision construing the clause, *United States and Aloff v. Aster*, 275 F.2d 281, 283 (3 Cir.), *cert. denied*, 364 U.S. 894, 81 S.Ct. 223, 5 L.Ed.2d 188 (1960), gives it a literal reading which supports the ruling by the district judge that knowledge by the Government prior to suit bars the action, even if the plaintiff is the source of that knowledge. We, like others, see *United States ex rel. Vance v. Westinghouse Electric Corp.*, 363 F.Supp. 1038, 1041–42 (W.D.Pa.1973); *United States ex rel. Davis v. Long's Drugs, Inc.*, 411 F.Supp. 1144, 1150–52 (S.D.Cal. 1976) (dictum), are not altogether happy with this approach, which extends the clause considerably beyond the evil sought to be remedied and gives it a broader effect than would be indicated by the legislative

history reviewed by Judge Hastie in the district court decision, 176 F.Supp. 208, 209–10 (E.D.Pa.1959), affirmed in *Aster, supra,* and by Judge Knox in *Vance, supra,* 363 F.Supp. at 1041–42. Safir is at an opposite pole from the "mere busybody who copies a Government's indictment as his own complaint and who brings to light no frauds not already disclosed and no injury to the Treasury not already in process of vindication", described in the dissent of Mr. Justice Jackson in *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 558, 63 S.Ct. 379, 391, 87 L.Ed. 443 (1943), the case which inspired the 1943 amendments to the *qui tam* statute. Moreover, it seems rather curious that an informer who makes only a partial or merely conclusory disclosure to the United States before filing suit should be free to carry on a *qui tam* action or to receive an award, 31 U.S.C. § 232(E)(1), if the United States elects to take over the prosecution, whereas the informer who has already furnished complete information should be barred from either. We have wondered whether some argument could be made for the plaintiff on the basis that no one in the Government had entertained any thought of pursuing the steamship companies under 31 U.S.C. § 231 which permits recovery not simply of any subsidies illegally paid but of "the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit." However, this would be true in almost any false claims suit which was not duplicative of one already filed or in course of preparation by the Government. Moreover, such an argument would still confront the obstacle that the false claims suit would be "based upon evidence or information" already in the possession of the Government, and would have to face

---

5. The judge stated that the only new evidence alleged by Safir, excerpts from which were attached to his opinion, "related to a corrupt arrangement to frustrate plaintiff's endeavor to vindicate his claims" by a "deal" and concluded that this "is neither germane to the False Claims Act case nor to the Government's claims under 46 U.S.C. § 1227, nor is it material that was not in the possession of the Government since it professedly came from 'leaks' from the Watergate Special Prosecutor's office." Since we agree that the matter was not germane to the False Claims Act claim, we have no occasion to consider the correctness of the judge's two other propositions.

our decision in *United States ex rel. Greenberg v. Burmah Oil Co.,* 558 F.2d 43, 45–46 (2 Cir.), *cert. denied,* 434 U.S. 967, 98 S.Ct. 511, 54 L.Ed.2d 454 (1977), see also *United States ex rel. Bayarsky v. Brooks,* 110 F.Supp. 175, 180 (D.N.J.1953), *aff'd* 210 F.2d 257 (3 Cir. 1954); *United States ex rel. McCans v. Armour & Co.,* 146 F.Supp. 546, 549 (D.D.C.1956), *aff'd* 102 U.S.App.D.C. 391, 254 F.2d 90, *cert. denied,* 358 U.S. 834, 79 S.Ct. 35, 3 L.Ed.2d 63 (1958).

While a case may arise when the literalism of *Aster* would be so offensive to the intention of Congress as to demand a more liberal approach, we do not think this to be one. Despite his years of valiant effort, when all is said and done, Mr. Safir had three choices available to him in the late 1960's. He could have instituted a treble damage action on behalf of himself and his company for injury to business or property under the precise terms of § 810 of the Merchant Marine Act, 1936, 46 U.S.C. § 1227; he could, if he had thought of it, have withheld at least some information from the Government and brought a *qui tam* action under 31 U.S.C. §§ 231–232; or he could have done what he did, namely, endeavor to force the Maritime Administrator to take action to recover subsidies illegally paid. Under either of the first two courses, he would have been required to incur the complete burden of the expense of prosecution unless the Government elected to take over the *qui tam* action. Having opted for the third course and thereby involved the Government with the full expense of prosecution, he may not now bring a *qui tam* action on the basis of the same information he has already furnished.

The orders are affirmed.